Opinion filed January 4, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed January 4,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00417-CV 

                                                    __________

 

                    STATE OFFICE OF RISK MANAGEMENT, Appellant

 

                                                             V.

 

                                        BELINDA
BAKER, Appellee

 



 

                                  On
Appeal from the County Court at Law No. 2

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CC-11,641

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

In
this workers=
compensation case, the State Office of Risk Management (SORM) appeals an award
to Belinda Baker for depression that she asserted was a result of a fall at
work.  The Texas Workers=
Compensation Commission found that Baker=s
compensable injury extended to and included her depression, and SORM sought
judicial review.  After SORM presented its case -in-chief to the jury, Baker
moved for a directed verdict on the basis that SORM failed to introduce any
probative evidence that Baker=s
injury did not cause the recurrence of Baker=s
depression.  The trial court granted Baker=s
motion.  We reverse and remand.  








In
its sole issue on appeal, SORM contends that the trial court erred in granting
the directed verdict because SORM created fact issues on whether Baker=s injury extended to and
included depression.  SORM does not dispute the compensability of Baker=s work-related back injury,
just the extension of that injury to include depression. 

An
employee with a compensable injury is entitled to compensation from SORM as
provided for in the Texas Workers=
Compensation Act, Tex. Lab. Code Ann.
tit. 5, subtit. A (Vernon 2006 & Supp. 2007).  Section 501.021.  A
compensable injury is Aan
injury that arises out of and in the course and scope of employment for which
compensation is payable under this subtitle.@ 
Sections 401.011(10), 501.001(2).  Injury is defined as Adamage or harm to the physical structure of
the body and a disease or infection naturally resulting from the damage or
harm.  The term includes an occupational disease.@ 
Section 401.011(26).  The term Ainjury@ also includes the
aggravation of preexisting conditions or injuries.  Cooper v. St. Paul Fire
& Marine Ins. Co., 985 S.W.2d 614, 616-18 (Tex. App.CAmarillo 1999, no pet.). 
As the party appealing the commission=s
decision regarding compensability, SORM had the burden at trial to prove by a
preponderance of the evidence that Baker=s
depression was not an extension of her work-related back injury and, therefore,
was not compensable.  Section 410.301(a), 410.303. 

On
appeal, we must determine whether the trial court erred in instructing a
verdict in favor of Baker.  A directed verdict for a defendant may be proper in
two situations.  Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,
29 S.W.3d 74, 77 (Tex. 2000).  First, a trial court may direct a verdict when a
plaintiff fails to present evidence raising a fact issue essential to its right
of recovery.  Id.; Szczepanik v. First S. Trust Co., 883 S.W.2d
648, 649 (Tex. 1994).  Second, a trial court may direct a verdict for the
defendant if the plaintiff admits or the evidence conclusively establishes a
defense to the plaintiff=s
cause of action.  Prudential, 29 S.W.3d 74; Szczepanik, 883
S.W.2d 648.  In reviewing the granting of a directed verdict, we apply the same
standard of review as we do when assessing a no-evidence or legal sufficiency
challenge.  City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005). 
We may sustain such a challenge or uphold a directed verdict only when (1) the
record discloses a complete absence of a vital fact, (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact, (3) the only evidence offered to prove a vital fact is no
more than a mere scintilla, or (4) the evidence conclusively establishes the
opposite of a vital fact.  Id. at 810 (citing Robert W. Calvert, ANo Evidence@ and AInsufficient Evidence@ Points of Error, 38 Texas L. Rev. 361, 362-63 (1960)).  








The
record shows that Baker stumbled over a threshold at her place of employment on
June 7, 1999.  Baker fell against the door but did not fall to the floor. 
Later that morning, she began to feel intense pain in her lower back.  Baker
endured various back and spinal surgeries from November 2000 to December 2003
and was about to undergo another surgery at the time of trial in 2005.

Baker
went to psychiatrist Dr. Wilbur G. Lineback for treatment of depression on May
31, 2001, and continued until October 2001 when workers= compensation would not approve payment for
any further sessions.  Baker testified that she began suffering from depression
around April 2, 2001.  Dr. Lineback diagnosed Baker as suffering from major
depression, severe without psychotic features, recurrent.  Dr. Lineback
subsequently noted on a prescription pad that Baker=s depression was attributable to her back
injury.  Baker had been diagnosed by other doctors with recurrent major
depression prior to her work-related injury.

Baker=s psychiatric history showed
that she had been diagnosed with major depressive disorder, recurring, as far
back as the early 1980s when she was a teenager.  Throughout the 1980s, doctors
had prescribed various psychotropic medications for Baker=s depression.  She had been
hospitalized in a psychiatric institution two or three times.  She had had
suicidal thoughts prior to the work-related injury, but none as a result of the
injury.  Baker was treated for depression by Dr. Olga Campbell, a psychologist,
off and on beginning in 1995.  Baker had also been treated for depression by
Dr. Judy C. Googins, in 1998, prior to her work-related injury.  She had been
experiencing symptoms of depression for five years off and on prior to seeing
Dr. Googins.  She stated that, at the time she sought help from Dr. Googins,
her depression had been magnified by the breakup of a relationship.  Dr.
Googins prescribed medications B
Zoloft and Effexor B
that helped.  However, on her own accord, Baker stopped taking the medications
prescribed by Dr. Googins for her major depressive disorder, recurrent. 
In 2000, approximately one year after the injury at work, Baker was evaluated
for social security purposes by Dr. John L. Carrick, a psychiatrist.  Dr.
Carrick diagnosed Baker as having major depression, severe.








Baker=s records show that she
misinformed Dr. Lineback by telling him that she had been Adepression-free@ for three or four years. 
Baker also reported to Dr. Lineback that, right after the accident at work, she
had depression; however, she testified at trial that Ait wasn=t
impairing@ her.  Baker
testified that her symptoms Afor
that episode,@ the one
for which she sought compensation from SORM and treatment from Dr. Lineback,
did not start until April 2001.  The record shows that, about the same time
that this episode of depression began, Baker was having marital difficulties
very early in her marriage and her husband was abusing drugs.

SORM
called Dr. Michael D. Jenkins to testify about Baker=s psychiatric condition. Dr. Jenkins 
reviewed a large stack of Baker=s
records, going back into the 1980s, from six or seven different doctors.  When
asked whether Baker=s
physical work-related injury extended to and included depression, Dr. Jenkins
testified that, based on reasonable medical probability, Baker=s work-related injury did
not cause her major depressive disorder.  Dr. Jenkins testified that major
depressive disorder is different from just feeling down: it includes a
depressed mood and disturbances in sleep, appetite, energy, concentration,
hopelessness, helplessness, worthlessness, and possibly suicidal thoughts. 
Furthermore, Dr. Jenkins stated that Baker=s
major depressive disorder, recurrent, began when she was seventeen and would
continue throughout her life.

Dr.
Jenkins noted that Baker=s
psychiatric history began around the age of eighteen with an episode of major depressive
disorder and that, since that time, she had been hospitalized two or three
times for major depressive disorder B
with the hospitalization extending over a period of six weeks on two separate
occasions.  According to Dr. Jenkins, prescribed medications were mandatory for
Baker=s condition. 
Baker=s return to a
doctor in 1998 did not surprise Dr. Jenkins because major depressive disorder Ais a relapsing, reoccurring
disease process or illness@
that needs to be treated continuously with a lifetime medication.  Dr. Jenkins
noted that Baker, however, did not continue taking her antidepressant
medications.  Therefore, the relapse or recurrence of Baker=s depressive symptoms would
be expected by Dr. Jenkins.  According to Dr. Jenkins, someone suffering from
Baker=s condition
could expect a future relapse, regardless of life circumstances, Ato the tune of about 85
percent plus.@ 
According to Dr. Jenkins, that percentage is drastically reduced by actively
taking regular antidepressant medications; otherwise, Ait=s
really not a matter of -- of if, but when@
someone with this disorder will have a recurrence.  At the time of her first
visit to Dr. Lineback, Baker had not been taking her antidepressant medications
even though she admitted they helped her depression.  She was again started on
Zoloft, and Dr. Lineback reported: ALess
depression with Zoloft.@








According
to Dr. Jenkins, Baker merely had a Aremanifestation
of a preexisting condition.@
Dr. Jenkins testified that a stressor may or may not cause the symptoms of
depression to return and that A[t]here
is no way for anyone to know@
whether a specific stressor was the source of Baker=s recurrent episode of her major depressive
disorder.  Baker experienced various stressors and had a preexisting chemical
imbalance in her brain, which may have been triggered by these stressors. 
Thus, the recurrence may have been due to problems related to Baker=s back injury.  However,
Baker=s relapse could
also have been caused by other stressors that occurred around the time of the
onset of this episode, such as performing CPR in April 2001 on her soon-to-be
father-in-law after he was already dead, learning of her own father=s terminal lung disease,
dealing with her husband=s
drug abuse, or experiencing marital difficulties soon after the date of her
marriage.  Baker also had other physical ailments or possible stressors prior
to seeing Dr. Lineback that could have been a stressor leading to the relapse,
including stomach problems and gallbladder surgery unrelated to her back
injury.  Furthermore, sometimes relapses occur without any stressors.

Though
Dr. Jenkins could not definitively pinpoint the reason or reasons, if any, for
the recurrence of Baker=s
depression and, therefore, could not determine that Baker=s back Ainjury and surgery and
condition after the surgeries@
were not reasons for the recurrence, there was probative evidence from which
the jury could have found that Baker=s
work-related injury did not extend to and include depression.  See, e.g.,
Wootan v. Am. Motorist Ins. Co., 570 S.W.2d 572 (Tex. Civ. App.CCorpus Christi 1978, no
writ); Hunt v. State Office of Risk Mgmt., No. 14-05-00819-CV, 2007 WL
1412102 (Tex. App.CHouston
[14th Dist.] May 15, 2007, no pet.) (mem. op.).  The record contained ample
evidence of other reasons for Baker=s
recurrence.  We note also that, even though SORM had the burden of proof, SORM
was not required to prove its case conclusively.  Because SORM did not fail to
present evidence raising a fact issue and because the evidence did not
conclusively establish that Baker=s
work-related injury extended to and included depression, the trial court erred
in granting Baker=s
motion for a directed verdict.  SORM=s
issue is sustained. 

The
judgment of the trial court is reversed, and the cause is remanded for further
proceedings.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

January 4, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and
Strange, J.