HOME INSURANCE
COMPANY, Appellant,

v.

Emilio A. BLANCAS, Appellee.

No. 13–86–092–CV.

Court of Appeals of Texas,
Corpus Christi.

June 26, 1986.

William J. Gamble, James A. McCorquodale, San Antonio, for appellant.

Stephen Dittlinger, San Antonio, for appellee.

Before NYE, C.J., and UTTER and KENNEDY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a jury verdict in a worker's compensation case. The jury found that appellee is totally and permanently incapacitated as a result of lung disease incurred in the course of his employment at Aztec Ceramics. We affirm the judgment of the trial court.

Appellant's first, second, third, fifth, sixth, and seventh points of error challenge the factual and legal sufficiency of the evidence to support the trial court's judgment. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex. 1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

By its first three points of error, appellant argues that the evidence is factually and legally insufficient to support the jury's finding of total incapacity.

As of the date of trial, appellant had been employed for nearly twenty-seven years at Aztec Ceramics. For twenty-four years, appellee worked in a room called the "dust room." The dust room is part of the mixing department where bags of clay and talc are mixed together in order to form the material from which ceramic tile is made.

Dr. Nancy Fishback, a specialist in lung diseases, first examined appellee on November 22, 1982. She diagnosed appellee as having a "talc pneumoconiosis,"[1] a lung disease caused by prolonged exposure to talc dust. Shortly thereafter, and at Dr. Fishback's recommendation, appellee was removed from the dust room and placed in a maintenance job. His hourly wage rate was decreased from $5.75 per hour to $5.35 per hour.[2] Appellee has continued to see Dr. Fishback for the treatment of his lung condition and was last examined by her on April 16, 1985. Dr. Fishback testified that

appellee has experienced a twenty-five percent reduction in his pulmonary function,[3] as of his last appointment, compared to his first pulmonary function tests conducted in November, 1982. Dr. Fishback attributed this loss of pulmonary function to appellee's lung disease. Dr. Fishback also testified that appellee could not pass a pre-employment physical examination, stating that "I don't think anybody would hire him."

◼ The trial court properly instructed the jury on total incapacity as follows:

'Total Incapacity' does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment.

*See Liberty Mutual Insurance Co. v. Rosas,* 630 S.W.2d 504 (Tex.App.—Fort Worth 1982, no writ).

Appellant argues that since appellee is still working at Aztec Ceramics and is in fact earning a higher hourly wage rate than he did in the dust room, then he cannot be totally and permanently incapacitated. It is well-settled that a worker can be totally and permanently incapacitated, within the meaning of the Worker's Compensation Act, while he is working and earning money. *Texas Employer's Insurance Ass'n v. Cervantes,* 584 S.W.2d 376 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Texas Employer's Insurance Ass'n v. Wilson,* 563 S.W.2d 685 (Tex.Civ.App.—Fort Worth 1978, no writ); *Traveler's Insurance Co. v. Pierce,* 358 S.W.2d 947 (Tex.Civ.App.—Eastland 1962, no writ). A contrary rule would defeat the purpose of the Worker's Compensation Act. The evidence set forth

---

1. Pneumoconiosis is defined as "any disease of the lung caused by the inhalation of dust, especially mineral dusts that produce chronic induration and fibrosis." Blakiston's Gould Medical Dictionary 1068 (4th ed.1979).

2. Since his job change, appellee has received periodic increases. As of the date of trial, he was earning approximately $6.25 per hour.

3. Pulmonary function tests are used to determine a patient's breathing capabilities such as lung volume and inspiration and expiration rates.

above is sufficient to uphold the jury's finding that appellee's lung disease was a producing cause of total and permanent incapacity. Appellant's first, second, and third points of error are overruled.

■ By his fifth, sixth, and seventh points of error, appellant contends that the evidence is factually and legally insufficient to support the jury's finding that appellee's lung disease was a producing cause of any period of partial incapacity during which he sustained a loss of wage-earning capacity. The jury found that as a result of his lung disease, appellee suffered a period of partial incapacity from 12/1/82 to 4/23/85. These dates represent the approximate dates on which appellee was first diagnosed as having a talc-related pneumoconiosis and the date upon which it was discovered that he has suffered a twenty-five percent decrease in pulmonary function. The jury also found that appellee sustained a reduction in his average weekly earning capacity of $50.00 per week during this period. A reduction in earning capacity occurs when a worker can only perform part of his usual tasks or can only perform labor of a less renumberative class. *Select Insurance Co. v. Boucher*, 561 S.W.2d 474 (Tex.1978). The jury's finding of partial incapacity is supported by evidence that appellee was removed from his job in the dust room and placed in the maintenance department as a result of Dr. Fishback's diagnosis. Further, appellee's wages were reduced from $5.75 per hour to $5.35 per hour when he left the dust room. Dr. Fishback testified that during the period in question (12/1/82 through 4/23/85) appellee suffered a physical disability in the form of a twenty-five percent reduction in pulmonary function. A jury is allowed great latitude in arriving at the compensation to be awarded as reduced earning capacity because of the uncertain nature of the damages suffered. *See Texas Employer's Insurance Ass'n v. Paxton*, 612 S.W.2d 705 (Tex.Civ.App.—El Paso 1981, no writ); *Angelina Casualty Co. v. Jones*, 493 S.W.2d 247 (Tex.Civ.App.—Beaumont 1973, no writ). We find this evidence sufficient to support the jury's award of $50.00 per week as damages for appellee's reduction in earning capacity. Appellant's fifth, sixth, and seventh points of error are overruled.

■ By its fourth point of error, appellant contends that it was error to allow Dr. Fishback to testify about her examination and treatment of two of appellee's co-workers. Appellant objected on the basis of relevancy. The objection was overruled. Dr. Fishback then testified that biopsies performed on the two co-workers revealed that they both had asbestos bodies in their lungs, indicating asbestosis. Dr. Fishback went on to testify that based upon her examinations of the two co-workers, she was "sure" that there was asbestos in appellee's lungs. Dr. Fishback further stated that she would be "much more concerned about the possibility of his developing a carcinoma, cancer, somewhere along the line." Appellant did not object to this testimony by Dr. Fishback. Appellant cites the case of *Charter Oak Fire Insurance Co. v. Perez*, 446 S.W.2d 580 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.), for the proposition that "evidence of other worker's medical conditions and compensation claims should be excluded in the trial of a worker's compensation action based on a lung disease such as pneumoconiosis." We read *Charter Oak* differently. *Charter Oak* merely stands for the proposition that the *lack* of claims for compensation based upon lung disease is irrelevant evidence. *Charter Oak Fire Insurance Co. v. Perez*, 446 S.W.2d at 585–86. TEX.R. EVID. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Appellant further argues that appellee's claim for compensation was for a talc pneumoconiosis, not for a lung cancer which can be caused by asbestosis. However, a reading of appellee's first amended original petition reveals that appellee alleged that "he was exposed to talc, clay, dust and other

hazards and that his lungs have become adversely affected and injured." Asbestosis is obviously a type of pneumoconiosis.[4] The evidence established that appellee worked with these two co-workers in the dust room over a long period of time under the same conditions. Dr. Fishback testified that "it would be almost impossible" for appellee not to have asbestos in his lungs in light of the co-worker's positive lung biopsies. We find that this evidence was properly admitted for the purpose of showing the probability that appellee has contracted a pneumoconiosis, the basis of his claim for worker's compensation. Appellant's fourth point of error is overruled.

The judgment of the trial court is AFFIRMED.

---

**4.** Asbestosis is defined as a "pulmonary fibrosis due to the prolonged inhalation of asbestos dust." Blakiston's Gould Medical Dictionary 124 (4th ed.1979). *Compare with* the definition of pneumoconiosis in fn. 1.