**LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Eugenio MARTINEZ, Appellee.**

No. 11–87–268–CV.

Court of Appeals of Texas,
Eastland.

Jan. 12, 1989.

Rehearing Denied Jan. 12, 1989.

J. Patrick Gallagher, K. Marvin Adams, Fillmore, Herrick & Harrington, Fort Worth, for appellant.

Bob Hanna, Hanna, Bentley & Hanna, Jack Yates, Abilene, for appellee.

## OPINION

ARNOT, Justice.

At trial, a de novo appeal from an award by the Industrial Accident Board, Eugenio Martinez sued to recover for injuries sustained while working for B & M Service Company. The jury found that Martinez was totally and permanently incapacitated as a result of his injuries and that a prior compensable injury contributed 50 percent to his present incapacity. The trial court, disregarding the jury's finding that the prior injury contributed 50 percent to the appellee's present incapacity, entered judgment for total and permanent benefits. Lumbermens Mutual Casualty Company, B & M's insurance carrier, appeals the trial court's ruling and argues that the award to appellee should be reduced by 50 percent. Because there is evidence of probative value to support the jury's answer, the judgment of the trial court in favor of Martinez is reversed, and the cause is remanded with instruction to enter judgment based upon the jury's verdict.

B & M contracted with the Texas Highway Department to clean and mow roadside park sites and highway rights-of-way. B & M hired Martinez and his wife to mow and clean the park at Gustine, Texas, for a fixed fee. On March 21, 1985, Mrs. Martinez was operating a push mower while her husband operated a riding mower. He injured his back when the mower overturned.

Dr. Robert H. Saxton, a neurosurgeon, diagnosed the present injury as a ruptured disc at the fifth lumbar and first sacral vertebra (L–5, S–1). It is from this injury and the resulting operation that Martinez claims total and permanent incapacity.

In 1968, prior to his present injury, Martinez was injured while working at the Gold Kist Peanut Plant when a 240-pound bas-

ket fell on him. He sustained a ruptured disc at L-5, S-1 necessitating two operations which were performed by Dr. Marco Eugenio and Dr. John C. O'Loughlin.

■ Lumbermens pled TEX.REV.CIV. STAT.ANN. art. 8306, sec. 12c (Vernon Supp.1988) seeking to have Martinez' recovery reduced by the proportion to which the prior injury contributed to his present incapacity. In order to reduce the recovery of a workman due to a previous injury under Article 8306, sec. 12c, the insurance carrier must prove: (1) that the previous injury was compensable; (2) that it contributed to the present incapacity; and (3) the amount or percentage of such contribution. *Transport Insurance Company v. Mabra,* 487 S.W.2d 704 (Tex.1972). The jury found that Martinez' 1968 injury contributed 50 percent to his present incapacity.

Martinez filed a motion to disregard the jury's finding, arguing that there was no evidence of any percentage that the prior injury contributed to his present incapacity. The court granted the motion and entered a judgment for total and permanent incapacity.

■ The issue is whether or not there is any evidence to support the second and third element of the *Mabra* test, i.e., that the prior injury contributed to his present incapacity and the percentage or amount of that contribution.

In determining a "no evidence" point, we consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

The record reflects the following evidence. Martinez was hospitalized in 1973 for abdominal and chest pains. His treating physician was Dr. Jim Terrell, Jr. Martinez provided Dr. Terrell with the history of his back injury of 1968 and the resulting operations. Dr. Terrell expressed his opinion that Martinez was incapacitated be-

cause of his 1968 injury. Martinez continued to complain of pain in his lower back to Dr. Terrell, although his major complaints were in his abdominal area. In April of 1973, Martinez underwent surgery on his gastrointestinal tract. Dr. Terrell's notes of April 10, 1982, reflect that Martinez was totally incapacitated from his previous lower back surgery.

Dr. Saxton, the treating physician of the present injury, testified as follows:

Q: [D]o you have an opinion based on reasonable medical probability as to whether the condition that you operated on the plaintiff for was simply a recurrence of the condition he had in 1968?

A: Yes, I do.

Q: What is that opinion, please?

A: It is a recurrence of the 1968 condition.

Through the admission of medical records, it was established that several other treating physicians felt Martinez was totally disabled after the 1968 accident. Neither Dr. Saxton nor Dr. Terrell offered any opinion as to the precise amount or percentage the 1968 injury contributed to the present incapacity. Martinez testified that, because of his prior injury in 1968, he had not been able to secure full-time employment and that he took the job with B & M as a co-employee with his wife so she could assist him in performing the job.

Martinez argues that there must be "medical opinion testimony" of the amount of contribution, citing as authority *Charter Oak Fire Insurance Company v. Barrett,* 655 S.W.2d 333 (Tex.App.—San Antonio 1983, no writ); *Hartford Accident & Indemnity Company v. Contreras,* 498 S.W. 2d 419 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.); and *Millers Mutual Fire Insurance Company of Texas v. Monroe,* 495 S.W.2d 625 (Tex.Civ.App.— Waco 1973, writ ref'd n.r.e.). We disagree with appellee's contention.

A jury is neither limited nor bound by medical opinion testimony. The finding of contribution of a prior injury to the present incapacity of a worker is a question for the jury which can be supported by any compe-

tent evidence. We find no requirement in *Mabra* that the amount of contribution must be based solely upon medical opinion evidence. We find no requirement in Martinez' authorities that limits the evidence of the amount of contribution to medical opinions.

In *Contreras,* the trial court refused to submit issues inquiring as to the subsequent injury of the worker and its contributing percentage to his present incapacity. The appellate court noted that the treating physician gave his opinion that this was a reinjury of the same area but gave no testimony as to the amount or percentage that the subsequent injury contributed to the present incapacity. However, the trial court in *Contreras* correctly refused to submit the *Mabra* issues because the issues as requested misplaced the burden of proof. *Contreras* did not consider whether there was evidence of probative value to support the "cluster" of issues.

In *Monroe,* the court found that there was no evidence to support the submission of an issue to determine the amount of the contribution. The treating physician did not give an opinion as to the amount of the contribution. In *Barrett,* the court stated, "Even if we assume that the medical testimony established that the prior back injury contributed to plaintiff's present incapacity, the record contains no evidence concerning the percentage of contribution." Also, in *Texas Employers' Insurance Association v. Gomez,* 756 S.W.2d 80 (Tex.App.— El Paso 1988, no writ), the court found that there was no evidence to support an issue on the amount or percentage the preexisting injury might have contributed to the present incapacity. In *Gomez,* the court stated:

> No deposition or testimony by any doctor was offered in trial in regard to a medical opinion as to the amount or percentage of contribution the preexisting injury might have contributed to the incapacity of the [worker].

In *Gomez,* the court found that the only evidence to support the second prong of the *Mabra* test was that the worker "was pre-

disposed to be injured at the location of where the prior injury had occurred."

*Contreras, Monroe, Barrett,* and *Gomez* do not hold that there must be medical opinion testimony to support the finding of the amount of contribution. In those cases, it appears that there was a complete absence of evidence, medical and nonmedical, to support a finding or submission of an issue on the amount of contribution.

In the case before us, unlike the cases Martinez cites, there is sufficient evidence of probative value to support the jury's finding. While there is no direct medical opinion testimony of the exact percentage the prior injury contributed to the present incapacity, there is other evidence. Martinez testified that he could not perform the usual tasks of a workman due to this prior injury. It was necessary for him to get a job accompanied by his wife so that together the two of them could perform the usual tasks required of a single workman. Martinez testified that he is limited in the type of work he can perform because of his prior injury and has spent long periods of time unemployed prior to his most recent injury. Paul Martinez, appellee's son, testified that since 1968, the date of the first injury, his father had not had a steady job until his employment by B & M. He testified that his father had been working at odd jobs and that he had physically had a hard time since his first accident. Alexandria Martinez, appellee's wife, testified that, since the 1968 injury and prior to his employment by B & M, Martinez had periods when he could work and periods when he could not work. She further testified that he could not work at times because of his back ailment, his heart condition, his stomach problems, and emphysema. Martinez testified that, prior to his employment with B & M, he could only secure odd jobs because of his recurring problems with his back, emphysema, stomach, and heart. Dr. Terrell testified that Martinez was 100 percent incapacitated from his prior injury. Dr. Saxton testified that Martinez was totally and permanently incapacitated and that his second injury was a recurrence of the prior injury.

Viewing this evidence in the most favorable light, there is some evidence that Martinez' incapacity from his prior injury existed at the time of his present injury and contributed to his present incapacity. The amount of contribution was a question for the jury to answer. Having found evidence to support the jury's finding of 50 percent, we are not authorized to disturb this finding.

We find *Texas Employers' Insurance Association v. Etheredge*, 154 Tex. 1, 272 S.W.2d 869 (1954), instructive. The question in *Etheredge* was whether the preexisting disease of tuberculosis was the sole or a contributing cause to the worker's present disability. In that case, there was no evidence which assigned any particular percentage less than 100 percent to tuberculosis as the real cause of the disability. The jury found the contribution to be five percent. The Court in *Etheredge* noted the worker's evidence of the co-existence of both illnesses at the time of disability and noted the carrier's evidence attributing all disability to tuberculosis. The Court was of the opinion that this was some evidence of probative force from which the jury could draw a reasonable inference that the tuberculosis contributed in some degree to the worker's disability, and the Court held that the jury should have been permitted to determine the percentage of contribution. Although *Etheredge* deals with a preexisting illness and a different section of the Texas Workers' Compensation Act, TEX. REV.CIV.STAT.ANN. art. 8306, et seq. (Vernon 1967 & Supp.1988), we find the Court's reasoning to be persuasive.

The judgment of the trial court is reversed, and the cause is remanded for entry of judgment on the verdict.