**TRANSAMERICA INSURANCE COMPANY OF TEXAS, Appellant,**

v.

**Jesus HERNANDEZ, Appellee.**

**No. 13–88–197–CV.**

Court of Appeals of Texas, Corpus Christi.

March 16, 1989.

Rehearing Denied April 27, 1989.

John Milano, Jr., Lynn Coleman, Thornton, Summers, Biechlin, Dunham & Brown, Inc., San Antonio, for appellant.

Tony Martinez, Horacio L. Barrera, Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

This is a workers' compensation case. Jesus Hernandez brought suit against his employer's workers' compensation insurance carrier, Transamerica Insurance Company of Texas (TIC), for an incapacity caused by a back injury he sustained on January 4, 1985 while making a delivery for his employer, Ramirez Distributing Company. A jury found that Hernandez suffered a temporary total incapacity from January 4, 1985 through February 26, 1985, and a permanent partial incapacity after April 2, 1986. The jury, however, also found that a prior injury had contributed 90% to Hernandez' incapacity. The trial court granted judgment for Hernandez for full workers' compensation on the jury's findings of temporary total and permanent partial incapacity, and disregarded their findings on the amount of the incapacity attributable to the prior injury. TIC brings five points of error, complaining that the trial judge erred in disregarding the jury's findings on the prior injury and challenging the sufficiency of the evidence to support the jury's findings on incapacity resulting from the subsequent injury. We affirm the judgment of the trial court.

At trial, Jesus Hernandez testified that he has lived in the San Benito, Harlingen area all of his life. He had worked continuously for Ramirez Distributing Company as a sales supervisor from the time the business was acquired by Mr. Ramirez in 1980 through January of 1986. The business distributed Lone Star and other brands of beer, and Hernandez' duties included supervision of the drivers and salesmen on his routes and assisting in the delivery of beer kegs on Fridays. Hernandez injured his back in an automobile accident in 1979 while driving a company vehicle to call on a customer. He injured his back again on January 7, 1980 while delivering some kegs of beer on the job. Hernandez testified that he filed a workers' compensation claim and was paid compensation for the seven weeks he missed work as a result of the January 7th injury. From January 1980 through January 1985, Hernandez has had back pain off and on, for which he missed some time in 1985, but has otherwise continuously worked until January 1986. He injured his back again during deliveries on January 4, 1985. As a result of this subsequent injury, Hernandez first saw his family physician, Dr. Cecil Simmons, and was then referred to numerous specialists. Hernandez attempted to return to his normal duties at work, but was not able to do them as well after the injury. From January 4, 1985 to January 24, 1986, he performed mostly light-duty work and missed 18 days of work. However, Ramirez sold the business on February 5, 1986, and the new owner did not have light-duty employment to offer Hernandez. Since that time, Hernandez has attempted to find work through the Texas Employment Commission, but has been unsuccessful.

Four of appellee's treating physicians, Drs. Simmons, Fennegan, Keillor and Bassett, testified extensively by deposition.

Dr. Cecil Simmons, a family practicioner in San Benito, testified that he had known Hernandez since 1976. Hernandez had come to him complaining of back pain on numerous occasions ever since he was in a car accident on October 27, 1979. Simmons had referred him to Dr. Fennegan to explore the possibility of a ruptured disc. Simmons believes that, as a result of Hernandez' real or imagined back pain, he is presently unemployable.

Dr. Francis Fennegan, a neurosurgeon in Harlingen, testified that he first treated Hernandez on January 29, 1980 on referral from Dr. Simmons for back pain. He diagnosed Hernandez' problem as a ruptured disc, caused by Hernandez' lifting a fifteen-gallon beer keg. He further testified that this type of injury will heal naturally without special treatment. Dr. Fennegan saw Hernandez again on February 26, 1985 for back pains associated with the January 1985 injury. The results of Fennegan's

examination and tests run on Hernandez were normal, except for some tenderness on the left side at the same level as the ruptured disc in January 1980. As a result of his examination, Fennegan felt that, if Hernandez did sustain an injury in January 1985, it had healed by the time Fennegan examined him, and that his back problems had occurred over the years, and not as a result of the January 1985 accident. Dr. Fennegan testified that Hernandez could perform any job that does not require heavy lifting.

Dr. Herman Keillor, an orthopedic surgeon in Harlingen to whom Dr. Simmons had referred Hernandez for back and leg pain, first saw him on January 11, 1985, and again on January 24, 1985 and February 4, 1985. The results of Keillor's examinations and tests were normal, except for some arthritis in the low back joints which pre-dated the 1985 accident, and some evidence of the prior back injury. Keillor testified that in his opinion the underlying problem arose from a degenerative disc in the low back joints which could have been caused by a single injury, several small injuries, or just aging. However, because the degenerative disc showed up in February 1985, it was at least six months old at the time and its cause had to have pre-dated the 1985 accident. Based on Hernandez' leg pain, however, it was Keillor's further opinion that the 1985 injury aggravated the prior back injury by causing pressure on a nerve root, but that this problem went away quickly and without damage.

Finally, Dr. Rick Bassett, an orthopedic surgeon recommended by Hernandez' attorney, saw Hernandez first on January 24, 1986, and again on February 14, 1986 and March 7, 1986 for back pain. He diagnosed Hernandez' problem as ligament inflammation and early degenerative changes of the back. Dr. Bassett testified that Hernandez could do light-duty or sedentary work.

In its first point of error appellant complains that the trial court erred in disregarding the jury's finding that the 1980 accident contributed 90% to appellee's present disability.

Under the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8306, § 12c (Vernon Supp.1989), in order to reduce a worker's recovery because of a previous injury, the carrier must prove (1) that the previous injury was compensable, (2) that it contributed to the present incapacity, and (3) the amount or percentage of such contribution. *Transport Insurance Co. v. Mabra*, 487 S.W.2d 704, 707 (Tex.1972); *Northwestern National Insurance Co. v. Garcia*, 729 S.W.2d 321, 326 (Tex.App.—El Paso 1987, writ ref'd n.r.e.).

Issues were submitted in defense, asking whether the prior accident contributed to the worker's disability and to what extent; the jury answered that it did to the extent of 90%. The trial court, however, disregarded these issues and rendered judgment for appellee, without reduction for the prior injury. A trial court may disregard only those special issue findings which are immaterial or which have no support in the evidence. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967); *Kneip v. Unitedbank–Victoria*, 734 S.W. 2d 130, 133 (Tex.App.—Corpus Christi 1987, no writ); Tex.R.Civ.P. 301. The issues submitted were clearly material to appellant's defense of prior injury.

The appellant presented evidence that Hernandez sustained a prior injury which may have contributed to his present incapacity. In order to reduce appellee's recovery because of a prior injury, appellant had to prove also the amount or percentage of such contribution. *Charter Oak Fire Insurance Co. v. Barrett*, 655 S.W.2d 333, 337 (Tex.App.—San Antonio 1983, no writ). An expert need not testify to the exact percentage of the disability attributed to the prior injury by the jury, as long as he provides the jury with a reasonable percentage range within which that injury contributed to the disability. *See Harrison v. Texas Employers Insurance Association*, 747 S.W.2d 494, 497 (Tex.App.—Beaumont 1988, writ denied).

Appellant seems to contend that Dr. Fennegan's testimony that none of the present incapacity is attributable to the January 1985 injury suggests that the entire inca-

pacity is attributable to the prior injury, and this supports the jury's finding of a 90% contribution. Dr. Fennegan testified that he did not believe appellee's back problem resulted from the January 1985 accident, but that it occurred over the years. However, Fennegan also testified that the prior injury was of a type that would heal naturally and he did not suggest that appellee's present problems in any way stem from that prior injury. Dr. Keillor testified that he believed appellee's present incapacity was caused by a single injury, several injuries, or just aging, prior to the January 1985 injury. Neither did Keillor, however, testify that the January 1980 injury was the cause of appellee's back problem or some percentage thereof.

Since there is no testimony even of a range of percentages on which the jury could have based its finding of a 90% contribution, the trial court correctly disregarded the jury's findings on contribution of a prior injury. Appellant's first point of error is overruled.

In its fifth point of error appellant complains that the damages assessed against it are excessive, because the court failed to deduct for the prior injury's contribution to appellee's incapacity. Having dealt with the substance of this complaint sufficiently in point one, we overrule point five.

In its second, third and fourth points of error appellant complains that there is insufficient evidence to show that the January 1985 injury was a producing cause of any total or partial incapacity, or to show the beginning date of appellee's total incapacity. In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence*

*Points of Error*, 38 Texas L.Rev. 361 (1960).

By these points appellant challenges both the existence of an incapacity and the link between any such incapacity and the January 1985 injury. We will examine the sufficiency of the evidence first to show that the January 1985 injury was a producing cause of appellee's back problems, and then to show that the back problems created a temporary total and a permanent partial incapacity.

Dr. Fennegan testified that in his opinion the January 1985 injury had quickly healed and appellee's back problem occurred over the years and not as a result of the January 1985 injury. However, Dr. Keillor and Dr. Simmons both agreed in their testimony that the January 1985 injury aggravated a pre-existing condition in appellee's back, causing pressure on a nerve root and the pain and back problems of which appellee complained. Appellee himself testified that, although he attempted to return to his normal duties after the January 1985 injury, his back problems prevented him from performing them as well after the injury. Appellee's prior employer, Sonny Ramirez, also testified that appellee had trouble getting around after the January 1985 injury. There was sufficient evidence to show that the January 1985 injury was a producing cause of appellee's subsequent back problems. We will now address the extent to which these back problems incapacitated appellee.

Proof of the duration and extent of a disability resulting from an injury is, like the assessment of damages in a personal injury action, at best an estimate which must be determined by a jury from all the pertinent facts before it. *Reina v. General Accident Fire and Life Assurance Corp.*, 611 S.W.2d 415, 416 (Tex.1981); *International Insurance Co. v. Hernandez*, 659 S.W.2d 922, 923–24 (Tex.App.—Corpus Christi 1983, no writ); *Olivarez v. Texas Employers' Insurance Association*, 486 S.W.2d 884, 886 (Tex.Civ.App.—Corpus Christi 1972, no writ). A jury may reasonably infer permanent disability from circumstantial evidence produced by lay wit-

nesses. This is true even if such evidence is contradicted by the testimony of medical experts. The issue as to disability may be established by the worker alone. *Reine,* 611 S.W.2d at 417; *American Home Assurance Co. v. Guevara,* 717 S.W.2d 381, 383–84 (Tex.App.—San Antonio 1986, no writ); *Highlands Insurance Co. v. Baugh,* 605 S.W.2d 314, 316–17 (Tex.Civ.App.—Eastland 1980, no writ).

Total incapacity means that one is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment. *Home Insurance Co. v. Blancas,* 713 S.W.2d 192, 193 (Tex.App.—Corpus Christi 1986, no writ); *Liberty Mutual Ins. Co. v. Rosas,* 630 S.W.2d 504, 506 (Tex.App.—Fort Worth 1982, no writ). Total incapacity does not imply absolute physical inability to perform any kind of labor. *Commercial Insurance Co. v. Puente,* 535 S.W.2d 948, 950 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Partial incapacity occurs when injury disables a workman to perform part of the usual tasks of his job, though such disablement does not prevent him from procuring and retaining employment reasonably suitable to his physical condition and ability to work, or when because of his injury he is only able to perform labor of a less remunerative class than he performed before the injury, and as a consequence he suffers a depression or reduction in his earning capacity. *Puente,* 535 S.W.2d at 950; *see also Lumbermen's Mutual Casualty Co. v. Villalpando,* 605 S.W.2d 705 (Tex.Civ.App.—Corpus Christi 1980, no writ).

The jury awarded appellant damages based on temporary total incapacity beginning on January 4, 1985, the date of the injury, and ending on February 26, 1985. Dr. Keillor testified that when he saw appellee on January 11, 1985, he recommended that appellee stay off work for ten days, and again after his January 24, 1985 examination he recommended that appellee remain off work because of his continuing low back pain. Dr. Keillor then referred appellee to Dr. Fennegan for a re-evalua-tion. Dr. Fennegan examined appellee on February 26, 1985 and found him to be fit for any work not requiring heavy lifting.

The fact that appellee generally resumed his normal duties at work after the injury is but one factor to be considered by the jury in determining the duration and extent of disability. *See American Home Assurance Co. v. Guevara,* 717 S.W.2d 381, 384 (Tex.App.—San Antonio 1986, no writ); *Texas General Indemnity Co. v. Cox,* 544 S.W.2d 766, 768 (Tex.Civ.App.—Dallas 1976, no writ). A finding of total disability is not precluded merely because an injured employee is forced to resume work because of economic necessity. *Cox,* 544 S.W.2d at 768; *see also Home Insurance Co. v. Blancas,* 713 S.W.2d 192, 193 (Tex.App.—Corpus Christi 1986, no writ); *Aetna Casualty & Surety Co. v. Depoister,* 393 S.W.2d 822, 830 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.).

Dr. Keillor's testimony provides sufficient evidence to show that appellee was disabled from performing the usual tasks of a workman by the January 4, 1985 injury to such an extent he could not get and keep employment, until the date he was examined by Dr. Fennegan and found generally fit to work again.

Concerning appellant's claim of permanent partial incapacity, Dr. Fennegan, Dr. Keillor and Dr. Bassett testified to appellant's ability to perform only light-duty or sedentary work not involving heavy lifting, as a result of his back problems. Both appellee and his employer noticed his inability to perform his job as well after the injury and appellee's duties were reduced in the year following the January 1985 injury. After the distributorship changed owners, appellee was not rehired with the other employees because the new employer had no light-duty work to offer him, and appellee has been unable to secure light-duty employment since that time. We find sufficient evidence that appellee suffered a permanent partial incapacity as a result of the January 1985 injury.

Appellant's second, third and fourth points of error are overruled.

The judgment of the trial court is affirmed.